The STATE of Ohio, Appellee,

v.

PICKENS, Appellant.

[Cite as *State v. Pickens* (1996), 109 Ohio App.3d 147.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. CA 15333.

Decided Feb. 7, 1996.

*Carley J. Ingram,* Montgomery County Assistant Prosecuting Attorney, for appellee.

*Richard L. Kaplan,* for appellant.

FREDERICK N. YOUNG, Judge.

Appellant Erin S. Pickens appeals from her conviction and sentence in the Montgomery County Common Pleas Court for theft in violation of R.C. 2913.02(A)(1).

Although Pickens has failed to assign error as required by App.R. 16(A), she asserts in a "proposed rule of law" that when the state terminates an individual's participation in a statutory pretrial diversion program, the termination must be based upon clear and convincing evidence that the individual violated the diversion agreement.

Pickens's appeal stems from her December 4, 1993, arrest at a Dayton-area Sears department store. Sears loss prevention detectives observed Pickens, then a Sears employee, as she pretended to scan a customer's purchases into a cash register. After entering only a small percentage of the purchases into the register, Pickens placed the merchandise in two large shopping bags. Using a hidden camera and monitors, store detectives then watched the customer hand Pickens a one-dollar bill in exchange for the items.

Sears loss prevention detectives detained the customer and two accompanying juveniles when they attempted to exit the store. The detectives also escorted Pickens to the store's loss prevention office, where she signed a statement admitting her role in the merchandise theft. Shortly thereafter, a Trotwood police officer arrived, and, after receiving her *Miranda* rights, Pickens signed a second statement admitting her responsibility.

Pickens subsequently entered a pretrial diversion program established by the Montgomery County Prosecutor's Office. Pursuant to a written diversion agreement signed on February 24, 1994, Pickens agreed to comply with certain conditions, and the state agreed to suspend prosecution as long as Pickens fulfilled the agreement's terms. The parties also agreed that upon Pickens's successful completion of the diversion program, the case against her would be dismissed with prejudice. However, the agreement authorized the state to terminate Pickens's participation in the program if she failed to fulfill any of the agreement's conditions. Among other things, the agreement required Pickens to provide truthful information at all times, to submit to a polygraph test if requested by a diversion officer, and to refrain from criminal conduct and notify her diversion officer of any new arrest.

While participating in the diversion program, Pickens worked at an Elder Beerman department store in Dayton. On June 8, 1994, however, Pickens approached her diversion officer, Constance Rogacki, and explained that she no longer was working at Elder Beerman. Rogacki became suspicious when Pickens answered questions evasively and failed to elaborate about her reason for leaving the job. Consequently, Rogacki contacted Fred Johnson, head of security at Elder Beerman, who recalled that Pickens had been fired two months before for suspected theft from a cash register.

When Rogacki questioned Pickens, she denied taking any money from the cash register, but she admitted taking food from Amy's Cookies, a snack area in the department store. Pickens subsequently agreed to submit to a polygraph test, as provided in her diversion agreement. Rogacki informed Pickens that if she passed the polygraph, she would remain in the diversion program. However, if she failed the polygraph, she would be dismissed from the program.

Pickens underwent the examination on June 29, 1994, and a certified polygraph examiner concluded that her responses denying theft from Elder Beerman were untruthful. Based upon the results of the polygraph examination, the state terminated Pickens's participation in the diversion program in October 1994.

Thereafter, the state initiated proceedings against Pickens for the Sears theft, and a Montgomery County grand jury indicted her on November 22, 1994. Pickens subsequently filed a motion to dismiss the indictment or, alternatively, for reinstatement into the diversion program. Pickens also requested an evidentiary hearing on the motion. The trial court conducted the requested hearing on March 20, 1995, and March 23, 1995, and overruled Pickens's motion on April 12, 1995. Pickens then entered a no contest plea to theft, and the trial court imposed an eighteen-month prison sentence, suspended upon her completion of five years' probation.

Pickens subsequently filed this timely appeal in which she advances the following "proposed rule of law":

"When the state seeks to terminate the participation of an individual who has entered into a statutory pre-trial diversion program, the termination must be based upon clear and convincing evidence that the diversion subject violated the diversion agreement."

Stated in the proper form, Pickens contends the trial court erred in overruling her motion to dismiss the indictment or to reinstate diversion because the state lacked clear and convincing evidence of a violation of the diversion agreement.

In support of this argument, Pickens first cites *State v. Sneed* (Jan. 8, 1986), Montgomery App. No. CA 8837, unreported, 1986 WL 714. This court declared in *Sneed* that participants in pretrial diversion programs are entitled to a due process hearing upon their discharge from the programs. Pickens notes, however, that *Sneed* left unresolved precisely what grounds are sufficient to justify terminating diversion.

In the present case, Pickens claims the state lacked any evidence demonstrating a violation of her diversion agreement. Consequently, she argues that the state violated the diversion agreement and improperly terminated her participation in the program. Specifically, Pickens cites testimony from Constance Rogacki, her diversion officer, who explained that Pickens was terminated based solely upon her failure of the polygraph examination. Pickens contends, however, that the diversion agreement only required her to *take* a polygraph test. She reasons that if the state had intended to require *passing* the test, the diversion agreement should have stated the requirement expressly.

Conversely, the state relies upon Pickens's violation of three diversion agreement provisions: (1) to provide truthful information at all times, (2) to submit to a polygraph test, and (3) to refrain from further criminal conduct and to notify her diversion officer of any new arrest. Specifically, the state claims that Pickens failed to provide truthful information when she evaded questions about her firing from Elder Beerman. In addition, the state argues that Pickens violated the polygraph provision when she failed the test. The state interprets the provision as implicitly requiring passage. Finally, the state contends that based upon Pickens's evasiveness when discussing her employment, information provided by the Elder Beerman security chief, and Pickens's failure of the polygraph test, the diversion officer possessed probable cause to believe Pickens had committed another criminal offense.

Our review of the record supports the conclusion that Pickens did violate the diversion condition requiring her to provide truthful information when she evaded questions about her job loss. Furthermore, the record also contains evidence

suggesting that Pickens failed to refrain from further criminal conduct. Nevertheless, we cannot accept the state's contention that these violations led to Pickens's termination. Rogacki testified at the termination hearing that Pickens's evasiveness and the security chief's information merely raised suspicion and prompted the polygraph administration. In addition, she testified that if Pickens had passed the polygraph, she would not have been terminated.

Therefore, Pickens's evasiveness and the security chief's information were not relied upon to justify diversion termination. Those factors simply motivated Rogacki to order a polygraph test. Indeed, Rogacki testified that Pickens's performance on the polygraph alone caused her dismissal. Nevertheless, we find Pickens's argument meritless. We cannot accept the conclusion that she was required to *take*, but not *pass*, a polygraph examination. Implicit in a requirement that Pickens submit to a polygraph test is a concomitant requirement that she pass the examination. Indeed, Pickens's submission to the test would prove pointless if neither party could use the results. Consequently, we believe that Pickens violated the polygraph provision of her diversion agreement when she failed the June 29, 1994 examination.

Moreover, even if we accept Pickens's assertion that the diversion agreement required her only to *take* the test, the test results themselves—and not just Pickens's evasiveness about losing her Elder Beerman job—demonstrate a violation of the requirement that Pickens provide truthful information.

As we noted above, we cannot accept the state's argument that Pickens's termination was proper because she failed to provide truthful information when asked why she left Elder Beerman. Rogacki testified that Pickens's deceptiveness only prompted administration of the polygraph examination, and the test results themselves prompted her dismissal.

However, Pickens's polygraph results demonstrate a violation of two diversion conditions. First, as explained above, the results demonstrate Pickens's violation of the implicit requirement that she pass the test. Second, the results demonstrate Pickens's violation of the express requirement that she provide truthful information. Thus, even if Pickens is correct and the diversion agreement required her only to *take* a polygraph test, the results still support her dismissal under the requirement that she provide truthful information.

Indeed, Rogacki specifically testified: "If [Pickens] passed the polygraph, then she would stay in the diversion program. If she did not pass the polygraph, then the policy of the program is that she was not being truthful." In light of this testimony, we believe the results demonstrate a violation of two provisions: (1) the polygraph provision, and (2) the "truthful information" provision.

Furthermore, we reject Pickens's argument that the prosecutor's office must present clear and convincing evidence establishing a violation of the diversion agreement. Instead, we believe the state properly met its burden at the termination hearing of establishing why it terminated Pickens. Rogacki clearly testified that Pickens was dismissed based upon her failure of the polygraph examination. Consequently, Pickens then had the burden of establishing, by the greater weight of the evidence, that the state violated their agreement and abused its discretion when it revoked her participation. See *Sneed, supra* (noting that prosecutors "may not ignore [diversion] agreements or abuse [their] discretion"). The trial court concluded that Pickens failed to meet her burden, and we cannot say the court abused its discretion in so ruling.

Accordingly, we overrule Pickens's assignment of error and affirm the trial court's judgment.

*Judgment affirmed.*

FAIN and GRADY, JJ., concur.